## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MICHAEL TOBIN,<br><br>Plaintiff,<br><br><br>          v.<br><br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>Defendant. | Civil No. 1:19-CV-12810<br>       (RMB)<br><br>**OPINION** |

APPEARANCES:

BOSS & FRANKEL, P.A.
By: Richard L. Frankel, Esq.
Jennifer L. Stonage, Esq.
725 Kenilworth Avenue, Suite 2
Cherry Hill, New Jersey 08002
          Counsel for Michael Tobin

SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL
By: Naomi Mendelsohn, Special Assistant United States Attorney
Office of the General Counsel, Region III
P.O. Box 41777
Philadelphia, Pennsylvania 19101
          Counsel for Commissioner of the
          Social Security Administration

**RENEE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal by Plaintiff Michael Tobin ("Plaintiff") of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for social security disability benefits. For the reasons set forth herein, the Court will **VACATE** the decision of the Administrative Law Judge (the "ALJ") and **REMAND** for proceedings consistent with this Opinion.

## I.   PROCEDURAL HISTORY

On December 21, 2013, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging disability beginning December 15, 2011, based on a variety of physical and mental health conditions, including recurrent pulmonary embolisms, lumbar degenerative disc disease, obstructive sleep apnea, sarcoidosis, bipolar disorder, attention deficit hyperactivity disorder, and borderline intellectual functioning. (Administrative Record ("A.R."), 279). Plaintiff's claim was initially denied on July 29, 2014, and again denied upon reconsideration on February 20, 2015. (A.R., 36). ALJ Lisa Hibner presided over the disability hearing on October 17, 2017. (A.R., 55-91). Testimony was taken from Plaintiff and a Vocational Expert ("VE"), Sheila Justice (A.R., 55-91).

2

Following the hearing, the ALJ issued a decision on February 15, 2018, which denied Plaintiff's claim. (A.R., 46). Plaintiff's request for review was denied by the Appeals Council on March 20, 2019, rendering the ALJ's decision as final. (A.R., 1).  Plaintiff's appeal is presently before this Court.

## II.   <u>**STANDARD OF REVIEW**</u>

When reviewing a final decision of an ALJ regarding disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, n. 10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Cons. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>Albert Einstein Med. Ctr. v. Sebelius</u>, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. <u>See</u> <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. <u>Hess</u>, 931

F.3d at n. 10 (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011)).

The Social Security Act ("SSA") defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of proof at steps one through four, and the Commissioner of Social Security at step five. Hess, 931 F.3d at 201 (citing Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010)). Recently in Hess, 931 F.3d at 201-02, the Third Circuit described the ALJ's role

4

in the Commissioner's inquiry at each step of this analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience [.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podeworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he

is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

## III. **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal. Plaintiff allegedly suffers from several physical and mental health conditions, including recurrent pulmonary embolisms, lumbar degenerative disc disease, obesity, obstructive sleep apnea, sarcoidosis, prothrombin mutation, bipolar disorder, schizophrenia, attention deficit hyperactivity disorder, and borderline intellectual functioning. (A.R., 38, 279). Plaintiff, who was twenty-seven years old on the Alleged Onset Date (the "AOD") of December 15, 2011, took special education classes, graduated high school, and has not received further formal educational training beyond high school. (A.R., 46, 68-69, 279).

### A. Plaintiff's Employment History

Plaintiff worked as a fast food cashier from 2000 to 2002, as a stocker from 2004 to 2006, and as a janitor from 2006 to 2011. (A.R., 86-87, 104-05). When asked why he stopped working, Plaintiff testified that he was terminated from his janitorial job because he was in a "manic state of mind" and was "talking inappropriately with coworkers[.]" (A.R., 63). Plaintiff testified that he did not look for new work following

6

termination from his janitorial position, citing depression and
back pain. (A.R., 63-64). Plaintiff testified that his
depression made it difficult to interact with others, and he
believes that his back injuries were a result of unloading cargo
from trucks when he worked as a stocker, and wearing a vacuum on
his back during his employment as a janitor. (A.R., 64).

### B. Plaintiff's Medical History

#### a. General Medical History

The record demonstrates a long history of mental and
physical health issues. When transferring to the Lumberton
Township School District in 1991, Plaintiff was placed in the
"Multiply Handicapped" class. (A.R., 394). A 1998 psychological
evaluation found that Plaintiff was "perceptually impaired" with
a full-scale IQ score of 75. (A.R., 380-81). Plaintiff received
treatment from Virtua Family Medicine between December 23, 2010
and April 26, 2017, during which he demonstrated lower back
pain, pulmonary embolisms, hyperlipidemia, hilar adenopathy,
obstructive sleep apnea, bipolar disorder, coagulation defects,
and polysubstance abuse. (A.R., 527, 542, 548, 1637-38). The
record likewise indicates that Plaintiff was diagnosed with Type
2 diabetes mellitus, deep venous thrombosis, sarcoidosis, and
shortness of breath believed to be related to deconditioning and
obesity. (A.R., 1667). Plaintiff has also been treated for

uncontrolled hypertension, anxiety, and aggressive behavior. (A.R., 430).

On March 22, 2014, Plaintiff was admitted to Virtua Memorial Hospital after making homicidal threats and apparently experiencing intermittent visual and auditory hallucinations. (A.R., 1703). During a subsequent hospitalization for homicidal thoughts, it was observed that Plaintiff had chronic back pain from a prior trauma, and also claimed to have a history of schizophrenia. (A.R., 574). On May 1, 2015, Plaintiff was charged with simple assault. (A.R., 1279). According to Plaintiff's mother, Plaintiff punched a woman who was walking down the street with her dog, tore off his shirt and chased a young boy who was riding a bicycle. (A.R., 660).

On November 4, 2015, Plaintiff was diagnosed with major depressive disorder. (A.R., 1215). On June 14, 2016, Plaintiff was hospitalized due to worsening depression. (A.R., 885). On November 9, 2016, Plaintiff was admitted to the hospital due to "increasing mania including poor sleep, increasing episodes of rage with homicidal ideation, increasing irritability, racing thoughts, [and] vague visual hallucinations." (A.R., 750).

Plaintiff stated that he had suicidal thoughts when he did not have marijuana. (A.R., 758).

### b. Non-Compliance With Treatment

The record also indicates frequent non-compliance with treatment by Plaintiff, and generally an improvement of symptoms with the resumption of treatment. During a May 2013 hospitalization for anxiety and aggressive behavior, it was noted that Plaintiff had been "very poorly compliant with outpatient treatment," and "rapid improvement" was noted once Plaintiff stated a trial of Zyprexa. (A.R., 428-30). Treatment notes indicate that Plaintiff was "very resistant" to aftercare recommendations. (A.R., 431). During a March 2014 hospitalization Plaintiff "adamantly" refused to participate in psychiatric daycare or meet with a psychiatrist. (A.R., 1704). When Plaintiff was hospitalized in November 2015 for increased paranoia and poor sleep Plaintiff admitted that he had been non-compliant with his medications. (A.R., 1271, 1273). When Plaintiff restarted his medications he showed "rapid improvements in all symptoms[,]" and was alert, oriented, and cooperative upon discharge. (A.R., 1296-1297). On April 29, 2016, it was observed that Plaintiff did not follow up with a nutritionist despite a referral, did not check his glucose levels despite being instructed to do so, and consumed soda for

breakfast. (A.R., 1667, 1669). The record indicates several other instances of non-compliance as well.

### c. Medical Opinions

Plaintiff's treating psychologist, Dr. Robert McFadden, concluded that Plaintiff had extreme limitations in the following areas: understanding and remembering detailed instructions, carrying out detailed instructions, the ability to make judgments on simple work-related functions, interacting appropriately with the public, interacting appropriately with supervisor(s), interacting appropriately with co-workers, responding appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting. (A.R., 287-88). Dr. McFadden likewise concluded that Plaintiff had marked limitations in understanding and remembering short, simple instructions, and in carrying out short, simple instructions. (A.R., 287). Dr. McFadden further concluded that Plaintiff demonstrated poor self-care, impaired cognition, and lacked the mental ability, judgment and competence to make decisions concerning his well-being. (A.R., 290).

At the request of the state agency, Dr. Dennis Coffey conducted a consultative psychiatric examination of Plaintiff. (A.R., 576). Dr. Coffey found Plaintiff to have a full-scale IQ score of 73, placing him in the borderline range of intellectual

functioning. (A.R., 576). Dr. Coffey likewise noted that Plaintiff's mood was tense, edgy, and stressed, and that these behavioral characteristics were related to Plaintiff's substance abuse. (A.R., 579). Dr. Coffey found that Plaintiff was oriented, had intact attention, could perform serial 7s, could add, subtract, and multiply, and had poor insight but adequate judgement. (A.R., 579).

Plaintiff's medical records were examined by state agency psychologists Sharon Flaherty and Floyd Turhan. (A.R., 100, 116). Dr. Flaherty concluded that Plaintiff had moderate limitations in his activities of daily living and maintaining social functioning, and marked difficulties in concentration, persistence, or pace. (A.R., 99). Dr. Flaherty conducted a mental RFC assessment and determined that Plaintiff was markedly limited in his ability to understand, remember and carry out detailed instructions, and in his ability to interact with the public. (A.R., 102-04). Dr. Flaherty lastly concluded that Plaintiff could sustain focus, memory, basic social interaction and mental pace/ persistence for simple routine tasks. (A.R., 104). Dr. Turhan affirmed Dr. Flaherty's mental RFC. (A.R., 119-121).

### C. The ALJ's Decision

Following the administrative hearing, the ALJ concluded that Plaintiff was not disabled under the meaning of the SSA.

11

(A.R., 48). At Step One of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the AOD of December 15, 2011 through his date last insured of December 31, 2016. (A.R., 38). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, schizophrenia, prothrombin mutation, sarcoidosis, depression, learning disability, degenerative disc disease, obesity, diabetes, and anxiety. (A.R., 38). The ALJ likewise found that there was objective evidence in the record that Plaintiff suffered from sleep apnea, but that it was non-severe. Id.

At Step Three the ALJ determined that Plaintiff did not have an impairment that met or was medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (A.R., 39).

At Step Four, the ALJ defined Plaintiff's RFC as follows:

> [T]he [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, kneel or crawl; no exposure to moving machinery, unprotected heights. The claimant must avoid concentrated exposure to: extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas, and exposure to chemicals. The claimant is limited to simple routine tasks; frequent interaction with supervisors and co-workers; occasional interaction with public; work in a low

12

> stress job, defined as having only occasional decision
> making and only occasional changes in the work
> setting. Additionally, the claimant is further
> limited to work with occasional judgment required on
> the job.

(A.R., 41).[1] In making this decision, the ALJ considered "all
symptoms and the extent to which these symptoms can reasonably
be accepted as consistent with the objective medical evidence
and other evidence, based on the requirements of 20 CFR 404.1529
and SSR 16-3p." (A.R., 41). The ALJ gave "great weight" to the
opinions of Dr. Flaherty and Dr. Turhan. (A.R., 45). The ALJ
gave "less weight" to the opinion of Dr. McFadden, stating that
the extreme limitations he suggested were "not supported by the
mental status examinations of record reflecting generally benign
mental status examinations when compliant with treatment, and
rapid improvement in symptoms when medication resumed." (A.R.,
45-46). The ALJ concluded step four by stating that Plaintiff
was unable to perform any past relevant work. (A.R., 46).

At step five, the ALJ determined that there were jobs that
existed in significant numbers in the national economy that
Plaintiff could have performed, and he was therefore not
disabled. (A.R., 46-47). Relying on VE's testimony, the jobs

---

[1] The Court notes that when explaining Plaintiff's RFC the ALJ noted that
Plaintiff had a driver's license despite conflicting evidence in the record.
(A.R., 45, 61). If Plaintiff's driver's license (or lack of one) is relevant
to the ALJ's decision on remand, the ALJ should more fully develop the record
to clarify this ambiguity.

13

identified by the ALJ were Laundry Worker, Hand Packager, and Box Printer. (A.R., 47).

## IV.  **DISCUSSION**

Plaintiff's Brief argues that the ALJ's decision is unsupported by substantial evidence because the ALJ erred in (1) failing to formulate Plaintiff's RFC to include specific restrictions based on Plaintiff's borderline intellectual functioning, (2) finding that Plaintiff had the mental capacity to perform unskilled work on a regular, full-time basis, (3) impermissibly substituting her judgment for that of Plaintiff's treating psychologist, and (4) not formulating Plaintiff's RFC to include limitations accounting for Plaintiff's prothrombin mutation, degenerative disc disease, and obesity. (Plaintiff's Brief ("P.B."), 20-28). Upon review, this Court cannot say that the ALJ's decision is supported by substantial evidence because of the ALJ's determination that Plaintiff could perform unskilled work on a regular, full-time basis, and the assignment of "less weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Robert McFadden. The Court need not address Plaintiff's objections to the ALJ's formulation of Plaintiff's mental RFC and physical RFC.

Plaintiff's Reply Brief further challenges the ALJ's decision by arguing that ALJ Hibner was not appointed in

accordance with the Constitution's Appointments Clause, and Plaintiff therefore did not receive a proper hearing. (Plaintiff's Reply Brief ("P.R.B."), 5). The Court need not decide this issue.

### A. Plaintiff's Ability To Perform Unskilled Work on a Regular, Full-Time Basis

Plaintiff argues that the ALJ erred in finding that Plaintiff had the ability to perform unskilled work on a regular, full-time basis. (P.B., 23). Specifically, Plaintiff argues that the ALJ erred because the VE testified that being absent four days per month would eliminate all jobs in the national economy, and that Plaintiff's necessary treatment schedule would make it impossible to miss fewer than four days per month. (P.B., 24). Plaintiff and Defendant agree that the ALJ's explanation for the frequency of Plaintiff's hospitalizations and treatment is Plaintiff's non-compliance with treatment. (P.B., 23; Defendant's Brief ("D.B."), 21). Indeed, the ALJ noted that Plaintiff's "multiple psychiatric hospitalizations... occurred after the claimant failed to be compliant with his psychotropic medication regimen, and generally showed great improvement once medication was resumed." (A.R., 43). The ALJ likewise stated "The overall record reflects that when the claimant was non-compliant with medications, his symptoms were exacerbated." (A.R., 42). Lastly, the ALJ opined

15

that "claimant's mental health symptoms appear to be well
regulated when the claimant is compliant with medication."
(A.R., 45). Plaintiff argues that if the ALJ believed Plaintiff
did not require the treatment that he had previously been
receiving then she should have explained that conclusion, and if
she did believe that such treatment was necessary she should
have addressed Plaintiff's ability to receive treatment and
obtain work in light of the VE's testimony. (P.B., 24).
Alternatively, Defendant argues that the ALJ appropriately
discussed and considered Plaintiff's treatment records
(including hospitalizations), and that "Nothing more was
required." (D.B., 20). Defendant also relies on a handful of
cases from other circuits indicating that the time that a
claimant would miss from work due to medical appointments and
treatment is not a relevant consideration for the ALJ; the law
of the Third Circuit, however, causes this Court to conclude
otherwise. (D.B., 20-21).

    "The RFC must be based on *all* of the relevant evidence in
the case record such as... The effects of treatment, including
limitations or restrictions imposed by the mechanics of
treatment (e.g., frequency of treatment, duration, disruption to
routine[.]" 1996 SSR LEXIS 5, at *13-14. The Third Circuit Court
of Appeals has held "in order to discharge the burden of
determining whether a claimant is capable of working on a

16

'regular, continuing or sustained basis,' the Secretary must take into account frequent medical episodes requiring hospitalization." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987) (citing Kangas v. Bowen, 823 F.2d 775, slip op. at 8 (3d Cir. 1987)). In Kangas, the Court held that the ALJ must consider the claimant's ability not only to obtain a job, but also their ability to retain that job in light of impairments that require frequent hospitalization. Kangas, 823 F.2d slip op. at 8. The Court likewise noted that the determination of whether one can engage in substantial gainful activity is a practical assessment, and the extent to which a disability may prevent regular work attendance is a relevant factor in that determination. Id. at 9. The Court ultimately vacated the ALJ's decision because it was "not reasonable to expect [the claimant] to be able to retain any such job when he ha[d] an impairment that require[d] frequent hospitalization[,]" and the ALJ failed to consider the effect of those hospitalizations on the claimant's ability to obtain and retain employment. Id. at 8-9.

Because the ALJ must consider whether Plaintiff could have, as a practical matter, attended work regularly, the relevant question becomes whether non-compliance with treatment was a sufficient basis for the ALJ to conclude that Plaintiff could have attended work with sufficient regularity- in and of itself it is not. It is an error for the ALJ to draw adverse inferences

17

from a claimant's failure to comply with treatment if the ALJ does not address whether that non-compliance was due to the claimant's mental illness. Vorhees v. Colvin, 215. F. Supp. 3d 358, 381 (M.D. Pa. 2015)(citing SSR No. 96-7p, 1996 SSR LEXIS 4, at *22 (July 2, 1996)). "Federal Courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, 'the result of [the] mental impairment [itself.]" Id. (quoting Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009)(quoting Mendez v. Chater, 943 F. Supp. 503, 508 (E.D. Pa. 1996))). "Courts have [also] acknowledged that noncompliance with treatment is especially prevalent among patients with bipolar disorder." Id. In fact, one Court has even called non-compliance with treatment a hallmark of bipolar disorder. Pounds v. Astrue, 772 F. Supp. 2d 713, 722 n.21 (W.D. Pa. 2011). It is not sufficient for an ALJ to cite a claimant's understanding of the need to comply with treatment, as there is a "critical distinction between [a claimant's] awareness of the need to take [his] medication and... whether [his] noncompliance with [his] medication was a medically-determinable symptom of [his] mental illness." Pate-Fires 564 F.3d at 945. An ALJ may deny a claimant social security benefits if the ALJ finds that the claimant unreasonably failed to comply with treatment, and compliance would have restored the claimant's ability to work. Sharp v. Bowen, 705 F. Supp 1111, 1123 (W.D. Pa. 1989) (citing

20 C.F.R. 404.1530). Alternatively, a claimant who reasonably refuses treatment cannot be denied Social Security benefits on those grounds. Id. at 1124 (citing 20 C.F.R 404.1530(c)). "Although some courts have used an objective standard when analyzing whether a claimant's refusal of prescribed treatment is reasonable or justifiable, the majority of courts use a more lenient, subjective standard. Id. In Sharp, the court held,

> in determining whether a claimant with a mental impairment has reasonably refused treatment, the question is whether he has justifiably refused in light of his psychological, social or other individual circumstances... An individual with a severe mental impairment quite likely lacks the capacity to be "reasonable." In addition, that individual may not have the same capacity to assess the risks and benefits of prescribed treatment as someone who is not affected by such an impairment.

Id.

In this case, the ALJ referred to Plaintiff's non-compliance with treatment, and indicated that Plaintiff's condition readily improved upon resumption of treatment. (A.R., 43). The ALJ did not, however, discuss whether Plaintiff's bipolar disorder or other severe mental impairments were a cause of Plaintiff's non-compliance with treatment. The ALJ also did not speak more broadly to the question of whether Plaintiff's non-compliance with treatment was reasonable. Based on VE's testimony, it is clear that if Plaintiff required hospitalizations and treatment at a rate resembling their

frequency during certain prior time periods, he would have been unable to obtain regular, full-time time work and would appropriately be considered disabled under the SSA. Because the ALJ relied heavily on Plaintiff's non-compliance in her opinion, but did not articulate whether she considered the possibility that Plaintiff's non-compliance was caused by Plaintiff's bipolar disorder or other severe mental impairments, this Court cannot say that the ALJ's decision is supported by substantial evidence.

**B. ALJ's Treatment of Dr. McFadden's Opinion**

Plaintiff next argues that the ALJ erred by impermissibly substituting her judgment for that of Plaintiff's treating psychiatrist, Dr. Robert McFadden. (P.B., 26). Plaintiff and Defendant agree that the ALJ assigned less weight to Dr. McFadden's opinion because of Plaintiff's non-compliance with treatment. (P.B., 26), (D.B., 22). Indeed, the ALJ assigned less weight to Dr. McFadden's opinion because "the extreme limitations opined to by Dr. McFadden are not supported by the mental status examinations of record reflecting generally benign mental status examinations *when compliant with treatment*, and rapid improvement in symptoms *when medication is resumed*." (A.R., 45-46) (emphasis added). Plaintiff argues that this was an improper rationale for the ALJ's assignment of less weight to Dr. McFadden's opinion, while defendant argues that it was

20

legally sufficient. (P.B., 25-26), (D.B., 22). Although the Court declines to say whether ALJ used her own judgement (as Plaintiff suggests), or instead relied on the opinions of medical professionals other than Dr. McFadden, this Court finds the ALJ did not articulate a sufficient rationale for assigning less weight to the opinions of Dr. McFadden and therefore cannot say that the ALJ's opinion is supported by substantial evidence.

The ALJ must evaluate every medical opinion received. Kline v. Saul, Civil No. 1:19-CV-205, 2019 U.S. Dist. LEXIS 211283, at *21 (M.D. Pa. Sept. 9, 2019). Social security regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. SSR No. 96-6p, 1996 SSR LEXIS 3, at *5 (July 2, 1996). Generally, more weight is given to opinions from treating sources. 20 CFR 404.1527. However, the opinion of treating sources does not bind the ALJ. Kline, 2019 U.S. Dist. LEXIS 211283, at *24. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight...." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). When a conflict in evidence exists, the ALJ may choose whom to credit, but cannot reject evidence for the wrong reason or no reason at all. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir 1993)). "It is the province and duty of the ALJ to

choose which medical opinions deserve greater weight[,]"
provided that the ALJ's decision is accompanied by an "adequate,
articulated rationale[.]" <u>Kline</u>, 2019 U.S. Dist. LEXIS 211283,
at *24.

The Court finds that the ALJ's articulated rationale for
assigning less weight to the opinion of Dr. McFadden is
inadequate because it too relies on Plaintiff's non-compliance
with treatment without addressing whether that non-compliance
was at least in part attributable to Plaintiff's bipolar
disorder or other severe mental impairments. In fact, Dr.
McFadden concluded that Plaintiff lacked the mental ability,
judgment, and competence to make decisions concerning his well-
being. (A.R., 290). It seems contradictory to discredit the
opinions of a medical professional who opined that Plaintiff
could not tend to his own well-being because the record reflects
that Plaintiff's limitations were less severe when he was
compliant with treatment, which was usually when he was under
the direct supervision and care of medical professionals, and
therefore not entirely independent as to his own well-being.
Because Dr. McFadden's opinion is generally entitled to greater
weight as a treating source, and the ALJ's rationale for
assigning that opinion less weight was Plaintiff's non-
compliance with treatment (without an accompanying discussion of
whether that non-compliance was a result of Plaintiff's severe

mental impairments) the Court cannot say that the ALJ's decision is supported by substantial evidence.

### C. **The Constitutional Status of the ALJ's Appointment**

Plaintiff argues that the ALJ was not appointed in compliance with the Constitution's Appointments Clause (P.R.B., 5). In Lucia v. SEC, 138 S. Ct. 2044, 2051 (2018) the Supreme Court held that ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" under the meaning of the Appointments Clause. Id. Because the ALJs were not appointed by the President, a court of law, or the head of a department as required by the Appointments Clause, their status as ALJs was deemed unconstitutional. Lucia, 138 S. Ct. at 2051, 2055. The Court noted that the appropriate remedy for such an error is a hearing before a properly appointed official, and held that such an official must be someone other than the ALJ who initially adjudicated the dispute. Id. at 2055 (citing Ryder v. United States, 515 U.S. 177, 183, 188 (1995)). It has been determined that the Supreme Court's decision in Lucia applies not only to ALJs of the SEC, but also those of the SSA. Holmes v. Berryhill, Civil No. 19-784, 2020 U.S. Dist. LEXIS 78378, at *2 (E.D. Pa. May 4, 2020). Plaintiff did not challenge the constitutionality of the ALJ's status in his initial brief, as there existed District of New Jersey caselaw indicating that a claimant was required to exhaust such a challenge before the ALJ, and that

23

except in "rare cases" unsuccessful claimants were not permitted to raise Appointments Clause challenges during judicial review without having first raised them at the administrative level. Sprouse v. Berryhill, 363 F. Supp. 3d 543, 550 (D.N.J. 2019). The law has since changed. Cirko ex. Rel Cirko v. Comm'r Soc. Sec, 948 F.3d 148, 152 (3d Cir. 2020). In Cirko, a precedential opinion of the Third Circuit Court of Appeals decided after the filing of Plaintiff's Brief, it was held that claimants are not required to exhaust Appointments Clause challenges before the ALJ, and it is permissible for such challenges to be raised initially on judicial review. Id.

Because the Court has decided to vacate and remand the ALJ's decision on grounds unrelated to the Appointments Clause, this issue is moot unless the government desires to have ALJ Hibner preside over Plaintiff's hearing on remand. Accordingly, within ten days of the issuance of this opinion the government shall inform this Court whether it concedes that ALJ Hibner's status did not comport with the Appointments Clause (and she will not preside over Plaintiff's hearing on remand), or whether it contends that the Appointments Clause was not violated and ALJ Hibner should preside on remand.

## V.   **CONCLUSION**

For the aforementioned reasons, the Court cannot determine whether the ALJ's decision is supported by substantial evidence.

As such, the ALJ's decision will be **VACATED** and **REMANDED** for further proceedings consistent with this Opinion. An appropriate Order shall issue on this date.

DATED: July 23, 2020

                         s/ Renee Marie Bumb
                        RENÉE MARIE BUMB
                        UNITED STATES DISTRICT JUDGE